## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

SOO LINE RAILROAD COMPANY
D/B/A CANADIAN PACIFIC,

                        Plaintiff,

    v.

CITY OF MINNEAPOLIS,
MINNEAPOLIS DEPARTMENT OF
CIVIL RIGHTS, VELMA J. KORBEL,
in her capacity as Director of the
Minneapolis Department of Civil Rights,
Labor Standards Enforcement Division,

                       Defendants.

Case No. _____

**COMPLAINT**

### INTRODUCTION

1.    Plaintiff Soo Line Railroad Company d/b/a Canadian Pacific (hereinafter referred to as "CP") seeks a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that the Minneapolis Sick and Safe Time Ordinance, Title 2, ch. 40, §§ 40.10-40.310 (the "Ordinance") is preempted, in whole or in part, by the Railroad Unemployment Insurance Act ("RUIA"), 45 U.S.C. §§ 351, *et seq.*; and/or the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, *et seq.*  CP also seeks injunctive relief prohibiting the City of Minneapolis, the Minneapolis Department of Civil Rights, and Velma J. Korbel, in her capacity as Director of the Minneapolis Department of Civil Rights (collectively, "Defendants"), from enforcing the Ordinance with respect to CP's employees.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1337 because it arises under an Act of Congress regulating commerce.

3.      This Court has authority to issue a declaratory judgment and grant further relief in this matter pursuant to 28 U.S.C. §§ 2201-2202.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial portion of events giving rise to this action occurred in this judicial district and/or because Defendants reside or are found in this judicial district.

## PARTIES

5.      Plaintiff Soo Line Railroad Company d/b/a Canadian Pacific ("CP") is a rail carrier as defined in the Interstate Commerce Act, as amended by the ICC Termination Act, 49 U.S.C. § 10102(5).  CP is also a rail carrier engaged in interstate or foreign commerce within the meaning and as defined in Section 1 of the RLA, 45 U.S.C. § 151, and an employer as defined in the RUIA, 45 U.S.C. § 351(a).  CP is organized under the laws of the state of Minnesota, with its principal place of business in Minnesota.  CP operates a freight rail transportation system in interstate commerce, including operations in North Dakota, Wisconsin, Illinois and in the state of Minnesota.  CP employs some individuals who work in the City of Minneapolis.

6.      Defendant City of Minneapolis is a home rule charter city under Minnesota law with the capacity to sue and be sued.

154014636.1

7.     Defendant Minneapolis Department of Civil Rights is a department of the City of Minneapolis charged with enforcing various Minneapolis Code of Ordinances related to employment and civil rights.

8.     Defendant Velma J. Korbel is the Director of the Minneapolis Department of Civil Rights and is named in her official capacity. As Director, she has authority to implement, administer and enforce the Ordinance.

## FACTUAL BACKGROUND

## A.     RAILROAD EMPLOYEE SICKNESS AND LEAVE BENEFITS

9.     Employees of CP, including those who work in Minneapolis, are eligible for sickness benefits coverage under the RUIA.   Under that federal statute, qualified employees may be entitled to up to twenty-six (26) weeks of compensation if temporarily unable to work due to illness, injury, or pregnancy. RUIA sickness benefits are administered by an independent federal agency, the Railroad Retirement Board ("RRB").

10.     Many of CP's employees, including employees who work in Minneapolis, are represented by various labor unions.  Pursuant to the RLA, the carriers bargain with these unions (who are "representatives" within the meaning of the RLA, 45 U.S.C. § 151) over rates of pay, rules, and working conditions, including various aspects of employee paid and unpaid leave.  Such collective bargaining has resulted in a variety of arrangements on, among other things, paid and unpaid leave.

11.     Existing CP collective bargaining agreements ("CBAs") concerning paid and unpaid leave vary by employee craft.  For example, unionized clerical employees of CP, some of whom work in Minneapolis, are entitled to RUIA sickness benefits and have paid

3

sick day provisions which supplement these RUIA benefits.  They are also entitled to paid personal leave days and paid vacation days.

12.     Unionized train dispatcher employees of CP, some of whom work in Minneapolis, are entitled to RUIA sickness benefits as well as paid sick day provisions which supplement these RUIA benefits.  They are also entitled to paid personal leave days, and paid vacation days.

13.     Unionized operations employees of CP such as conductors and engineers, some of whom perform work in Minneapolis, are entitled to RUIA sickness benefits as well as paid personal leave days and paid vacation days.

14.     Non-union employees, some of whom work in Minneapolis, start with a minimum of two (2) weeks of paid time off for which they can use for any purpose. Non-union employees are entitled to RUIA sickness benefits and, additionally, are eligible to receive supplemental benefits under the company's Short-Term Disability Plan.

15.     During rounds of collective bargaining, several of the railroad unions have proposed establishing or expanding paid sick and/or other leave benefits, such as additional paid vacation, in addition to the contractual and statutory benefits that railroad employees already receive. These are part of the collectively bargained for process carriers and unions engage in during the negotiating process.

**B.      THE MINNEAPOLIS SICK AND SAFE TIME ORDINANCE**

16.     On or about May 27, 2016, the City Council of the City of Minneapolis enacted the Minneapolis Sick and Safe Time Ordinance, Minneapolis Code of Ordinances, Title 2, ch. 40, §§ 40.10-40.310.  The Ordinance went into effect on July 1, 2017.

17.     The Ordinance provides for protected sick and safe time for covered employees, requires employers to track the accrual and use of sick and safe time, and, for employers of six or more employees, mandates that sick and safe time must be paid time.

18.     The Ordinance requires that qualifying employees accrue a minimum of one (1) hour of sick and safe time for every thirty (30) hours worked within the geographic boundaries of the city of Minneapolis up to a maximum of forty-eight (48) hours in a calendar year.

19.     Under the Ordinance, an "employee" is one "who perform(s) work within the geographic boundaries of the city of Minneapolis for at least eighty (80) hours in a year for that employer."  An employer is only required to allow an employee to use sick and safe time that is accrued pursuant to the Ordinance when the employee is scheduled to perform work within the geographic boundaries of the city of Minneapolis.

20.     Employees begin accruing paid sick and safe time on the date of hire or the date the Ordinance comes into effect, whichever is later.  Employees are entitled to use accrued sick and safe time beginning ninety (90) calendar days following commencement of their employment (provided they qualify as a covered employee and meet, *inter alia,* the 80 hours worked within the city threshold).

21.     Employees may use accrued paid sick and safe time to care for: (1) the employee's own (i) mental or physical illness, injury or health condition; (ii) need for medical diagnosis, care or treatment of a mental or physical illness, injury or health condition or (iii) need for preventive medical or health care; (2) a qualifying family member's (i) mental illness, injury or health condition; (ii) medical diagnosis, care or

154014636.1

treatment of a mental or physical illness, injury or health condition or (iii) who needs preventive medical or health care.  A covered employee may also use accrued sick and safe time for absence due to domestic abuse, sexual assault, or stalking of the employee or employee's family member provided the absence is for one or more qualifying reasons, one of which includes seeking medical attention related to physical or psychological injury or disability caused by domestic abuse, sexual assault or stalking.  The Ordinance also permits use for other specified reasons related to business, school or place of care closures for specified public health emergencies or other unexpected closure reasons as provided in the Ordinance.

22.     If the need for leave is foreseeable, an employer may require up to seven (7) days' advance notice of the intention to use sick and safe time. If the need is not foreseeable, the employer may require the employee to give notice as soon as practicable. An employer can require reasonable documentation that the sick and safe time is covered for a qualifying reason for absences exceeding three (3) consecutive days.

23.     The Ordinance imposes various notice and recordkeeping obligations on employers.

24.     The Ordinance exempts employers who provide their employees with paid time off under a paid time off, vacation, or other paid leave policy, as long as the employer makes available an amount of paid time off sufficient to meet the accrual requirements of the Ordinance that may be used for the same purposes, and under the same conditions, as sick and safe time under the Ordinance.

154014636.1

25.     Moreover, the Ordinance contains an express Preemption provision which states as follows:

> **40.60. – Preemption.**
> Nothing in this chapter shall be interpreted or applied so as to create any power or duty in conflict with federal or state law. (Ord. No. 2016-040, §1, 5-27-16).

## C.     THE CURRENT DISPUTE

26.     Notwithstanding this express preemption provision, by letter dated July 5, 2019, Velma J. Korbel in her capacity as Director of the Minneapolis Civil Rights Department, sent CP a Notice of Investigation (the "Notice") from the Minneapolis Department of Civil Rights informing CP that it would be subject to an investigative audit regarding its compliance with the Ordinance. The Notice alleges that CP has violated the Ordinance, stating that "the Minneapolis Department of Civil Rights has cause to believe a violation of Chapter 40—Workplace Regulations—of the Minneapolis Code of Ordinance has occurred."  The Notice states that, under the Ordinance, CP is required to submit a written statement declaring its position relative to the allegations in the Notice and also requests documentation in the form of CP's business policies by Friday, July 26, 2019.

27.     Following receipt of an extension through August 2, 2019, CP responded to the Notice as requested on such date, explaining its position that the Ordinance's preemption clause -- as well as federal law, including the RUIA, RLA, and other relevant principles -- preempts application of the Ordinance to CP's employees.

154014636.1

28.     Because the Department seeks to enforce the Ordinance against CP, and because CP believes Defendants' ongoing attempt to enforce the Ordinance against CP is preempted under the Ordinance's preemption clause and various federal laws, the issue is ripe for this Court's adjudication.

29.     CP lacks an adequate remedy at law because damages for injuries it will sustain if Defendants apply and enforce the Ordinance to CP would be difficult, if not impossible, to determine.

## COUNT I

30.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 29.

31.     The Supremacy Clause of the United States Constitution provides that federal law is the "supreme Law of the Land," and therefore it preempts state and local laws that interfere with or are contrary to federal law.

32.     The RUIA contains an express preemption provision. It provides that "[b]y enactment of this chapter the Congress makes *exclusive provision* . . . for the payment of sickness benefits for sickness periods after June 30, 1947, based upon employment (as defined in this chapter)." 45 U.S.C. § 363(b) (emphasis added). It further states that "Congress finds and declares that by virtue of the enactment of this chapter, the application of . . . State sickness laws after June 30, 1947, to such employment, except pursuant to section 362(g) of this title, would constitute an undue burden upon, and an undue interference with the effective regulation of, interstate commerce." *Id.* The RUIA therefore

preempts any other laws that require sickness benefits or compensation for railroad employees.

33.     Indeed, the Ordinance contains an express preemption clause that precludes enforcement of the Ordinance where its interpretation or application conflicts with federal law—here the RUIA.

34.     Because the Ordinance purports to require CP to provide sickness benefits or compensation to their employees, the Ordinance is preempted under § 363(b) of the RUIA.  Because Defendants are seeking to enforce the Ordinance against CP through its Notice of Investigation despite this preemption and contrary to the Ordinance's express preemption clause at 40.60, CP is entitled to a declaratory judgment establishing that the Ordinance is preempted by the RUIA.  *CSX Transp., Inc. v. Healey,* 327 F. Supp. 3d 260, 268 (D. Mass. 2018), *appeal docketed*, No. 19-1138 (1st Cir. Feb. 4, 2019) (holding the RUIA preempts the entirety of the Massachusetts paid sick leave law where that law included sickness benefits and leave provisions for reasons including time to address the "psychological, physical and legal effects of domestic violence" and leave to care for other qualifying members of an employee's family).

## COUNT II

35.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 34.

36.     The RLA governs labor relations in the railroad and airline industries.  The purposes of the RLA include, *inter alia*, to "avoid any interruption to commerce or to the

operation of any carrier engaged therein," and "to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions." 45 U.S.C. § 151a.

37.     The RLA prohibits changes in rates of pay, rules, and working conditions, as embodied in agreements, except through the collective bargaining procedures of the Act. 45 U.S.C. § 152.

38.     In enacting the RLA, Congress intended to leave settlement of all disputes over proposed changes in rates of pay, rules, and working conditions to collective bargaining. Accordingly, state and local laws that purport to mandate changes to rates of pay, rules, and working conditions are preempted unless such laws impose only "minimum labor standards" that do not conflict with the goals of federal labor law.

39.     The Ordinance conflicts with federal labor policy as embodied in the RLA to the extent that it requires CP to change rates of pay, rules, and working conditions in a fashion that has not been negotiated through the processes mandated by the RLA. The Ordinance is not a minimum labor standard because it imposes terms that unions have sought unsuccessfully in collective bargaining with CP, sets standards that exceed existing state and federal law, and otherwise discourages and interferes with collective bargaining under the RLA.

40.     The Ordinance also contains an express preemption clause that precludes enforcement of the Ordinance where its interpretation or application conflicts with federal law—here the RLA.

154014636.1

41.     By dictating a result that alters the outcome of CP's past and ongoing collective bargaining negotiations, the Ordinance deprives CP of an equitable bargaining process, and otherwise interferes with its rights under the RLA. It is therefore preempted by the RLA. Because Defendants are seeking to enforce the Ordinance against CP through its audit and Notice of Investigation despite this preemption and contrary to the Ordinance's express preemption clause at 40.60 precluding conflicts with federal law, CP is entitled to a declaratory judgment establishing that the Ordinance is preempted by the RLA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks for judgment against Defendants, and respectfully prays that the Court:

A.     Issue a judgment declaring that:

1.     The Minneapolis Safe and Sick Time Ordinance, Title 2, ch. 40, §§ 40.10-40.310, is preempted by the Railroad Unemployment Insurance Act and thus does not apply to individuals employed by CP; and

2.     The Minneapolis Safe and Sick Time Ordinance, Title 2, ch. 40, §§ 40.10-40.310, is preempted by the Railway Labor Act to the extent it would require CP to provide benefits to their unionized employees that were not bargained for between the parties through the procedures established by the Railway Labor Act and thus does not apply to individuals employed by CP; and

B.      Enjoin the Defendants from enforcing or otherwise applying the Ordinance against CP, including continuing of its Notice of Investigation dated July 5, 2019; and

C.      Issue such other relief as the Court may deem just and appropriate.


                                        **STINSON LLP**

Dated: August 2, 2019                   */s/ Tracey Holmes Donesky*

                                        Tracey Holmes Donesky (MN #0302727)
                                        Daniel Oberdorfer (MN #0233791)
                                        STINSON LLP
                                        50 South Sixth Street, Suite 2600
                                        Minneapolis, Minnesota 55402
                                        Telephone:  (612) 335-1500
                                        Facsimile:  (612) 335-1657
                                        tracey.donesky@stinson.com

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **SOO LINE RAILROAD COMPANY**
                                        **d/b/a CANADIAN PACIFIC**